RONALD CRUZ, State Bar No. 267038
Scheff, Washington & Driver, P.C.
1985 Linden St.
Oakland, CA 94607
(510) 384-8859 ronald.cruz@ueaa.net
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LILIA ABREGO FIGUEROA,

Plaintiff,

vs.

CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; MAYOR ERIC GARCETTI, in his individual and official capacity; CHIEF CHARLIE BECK of the Los Angeles Police Department, in his individual and official capacity; SERGEANT ROBERT CALDERON of the Los Angeles Police Department in his individual and official capacity; SERGEANT JEFF MARES of the Los Angeles Police Department officer in his individual and official capacity; and DOES 1-50, inclusive,

Defendants.

CASE NO.: 2:15-CV-01472

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

JURY TRIAL DEMANDED

Pursuant to the Federal Rules of Civil Procedure, the Plaintiff, by and through her attorneys, Scheff, Washington and Driver, P.C., states as follows:

**INTRODUCTION**

1.  This case arises out of the unlawful assault, battery, and murder of an unarmed 37-year-old Latino man -- Plaintiff's son, Omar Abrego -- on August 2, 2014 by two sergeants of the Los

Angeles Police Department (LAPD) who are from the same LAPD unit that murdered Ezell Ford, a 25-year-old unarmed black man, four blocks away and nine days later.

2. The defendant LAPD officers beat Mr. Abrego to death during a traffic stop, as he was coming home in his official work van. While Mr. Abrego bled to death from a laceration in his head, LAPD officers who arrived at the scene did nothing to address his urgent medical needs. Paramedics attended to Mr. Abrego late and dallied in their trip to the hospital, where he died twelve hours later as a result of the combined negligence and deliberate indifference of the LAPD and medical personnel.

3. Mr. Abrego's family, together with the Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN), have held marches that have united Latina/o and black residents of Los Angeles and demanded justice for Mr. Abrego. They are determined to see that the practice of allowing police officers to get away with murder from Ferguson to Los Angeles continue no longer.

## JURISDICTION AND VENUE

4. This claim is brought for redress of deprivations of constitutional rights within the Fourth and Fourteenth Amendments to the U.S. Constitution, as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988. This Court has subject matter jurisdiction under 28 USC §1331 and 28 USC §1343(3).

5. The United States District Court for the Central District of California is a proper venue for this action because a substantial part of the events giving rise to this action occurred in that district.

## PARTIES

6. The Plaintiff Lilia Abrego Figueroa is the surviving mother of decedent, Omar Abrego.

7.   The defendant City of Los Angeles is a governmental entity, duly organized and existing under the laws of the State of California.

8.   The defendant Los Angeles Police Department (LAPD) is a governmental entity, duly organized and existing under the laws of the State of California.

9.   The defendant Mayor Eric Garcetti, was Mayor of Los Angeles at all times relevant in this case. He is being sued in his individual and official capacity as Mayor of Los Angeles.

10.   The defendant Chief Charlie Beck, was chief of the LAPD at all times relevant in this case. He is being sued in his individual and official capacity as a police officer for LAPD.

11.   The defendant Sergeant Robert Calderon, was an employee of the Los Angeles Police Department (LAPD) and assigned to the Newton Division Gang Enforcement Detail at all times relevant in this case. He is being sued individually and in his official capacity as a police officer for LAPD.

12.   The defendant Sergeant Jeff Mares, was an employee of the Los Angeles Police Department (LAPD) and assigned to the Newton Division Gang Enforcement Detail at all times relevant in this case. He is being sued individually and in his official capacity as a police officer for LAPD.

13.   Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 60 and therefore sue these defendants by such fictitious names. Plaintiff alleges that each defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth below. Plaintiff will amend her complaint to state the names and capacities of DOES 1-60 when they have been ascertained.

14.   DOES 1 through 25 are police officers employed by LAPD, acting within the course and scope of their employment by defendant LAPD, who had custody of Mr. Abrego and were

deliberately indifferent to and were negligent in attending to his urgent medical needs, and were thus directly involved in the wrongful death of Omar Abrego.

15. DOES 26 through 30 are employees of the ambulance service that arrived at the scene, who were negligent in attending to Omar Abrego's urgent medical needs, thus directly and proximately causing his death.

16. DOES 31 through 35 are police officers employed by LAPD, acting within the course and scope of their employment by defendant LAPD, who knowingly gave false information to Plaintiff and her family about Omar Abrego's health status and whereabouts during the last hours of his life.

17. DOES 36 through 50 are employees of the City of Los Angeles and/or LAPD who failed to train and supervise employees of LAPD in a manner that led directly and proximately to Omar Abrego's death.

## STATEMENT OF FACTS

18. On Saturday, August 2, 2014, Omar Abrego was thirty-seven years old.

19. Mr. Abrego immigrated to the U.S. from Mexico to join his mother and father, to work and to bring up their families.

20. At the time of his death, Mr. Abrego was the loving father of three children, and the first-born child of Plaintiff Lilia Abrego Figueroa.

21. Mr. Abrego was the sole provider for his wife and children, often working seven days a week as a delivery truck driver for OnTrac.

22. Mr. Abrego and his mother, the Plaintiff, were very close. Mr. Abrego called the Plaintiff every day at the same time to see how she was doing and whether she needed anything. He brought her food every week, and Plaintiff visited her son often.

23. On August 2, 2014, at about 5:45pm, Mr. Abrego was driving home from work in his official OnTrac work van.

24. Defendants Sergeant Robert Calderon and Sergeant Jeff Mares conducted a traffic stop of Omar Abrego in front of Mr. Abrego's home, on the 6900 block of South Main Street in Los Angeles, California.

25. After Mr. Abrego exited the van, Sergeant Calderon and Sergeant Mares beat Mr. Abrego on the sidewalk over the course of about ten minutes.

26. At no point during this encounter did Mr. Abrego threaten or assault the officers.

27. During this beating, Sergeant Calderon and Sergeant Mares lacerated Mr. Abrego's head or face, causing blood to spill out from his head into the ground.

28. Bystanders took videos showing Mr. Abrego lying face down in a large pool of his own blood, yelling in agony as Sergeant Calderon and Sergeant Mares sat on top of him.

29. Numerous police cars arrived.

30. LAPD officers DOES 1 through 25 entered cover-up mode: they were completely indifferent to Mr. Abrego's urgent medical needs, keeping witnesses away and setting up Mr. Abrego to appear as if he were the criminal instead of the victim.

31. One male officer, DOE 1, a large man, added his own weight to Sergeant Calderon and Sergeant Mares in sitting on top of and placing handcuffs on an already prone, non-dangerous, and obviously dying Mr. Abrego.

32. One female officer, DOE 2, took a "selfie" of herself using her phone, with a dying Mr. Abrego behind her, as a callous trophy of what she and her coworkers were doing to Mr. Abrego.

33. An ambulance arrived at the scene, after backup police cars already had arrived.

34. DOES 26 through 30, employees of the ambulance service, were lackadaisical in providing care to Mr. Abrego, even as he lay in a pool of his own blood.

35. After a long time, DOES 26 through 30 placed a white sheet over Mr. Abrego, placed him in the ambulance, and drove away without turning on their siren.

36. DOE 3, an LAPD supervisor, left LAPD officers stationed at Mr. Abrego's house.

37. Plaintiff and other members of Mr. Abrego's family arrived at the house later that afternoon.

38. Plaintiff asked the LAPD officers present what had happened, and whether the officers had hurt her son. DOES 31 through 35, officers of LAPD, told her that the officers had not hurt her son, and that Mr. Abrego had "gotten into a fight" with police and had injured those officers. They told Plaintiff that her son was at California Hospital in downtown Los Angeles.

39. Meanwhile, Mr. Abrego was at a different hospital, at Centinela Hospital in Los Angeles.

40. Plaintiff and other members of Mr. Abrego's family went to California Hospital, but Mr. Abrego was not there. They returned to his home.

41. The LAPD officers DOES 36 through 40 were at the home, and told Plaintiff and the family that there was no use visiting Mr. Abrego because he was being held in police custody, and the soonest they could see him would be three days later on Tuesday, August 5, 2014, when he would appear in court.

42. Plaintiff eventually found out that Mr. Abrego was being held at Centinela Hospital in Los Angeles. They arrived there the following morning, on August 3, 2014.

43. At 11:00 a.m. on August 3, 2014, the staff of Centinela Hospital informed Plaintiff that Mr. Abrego had been pronounced dead at 5:10 a.m. that morning.

44. Beginning on August 2, 2014, the defendants City of Los Angeles and LAPD have acted in concert in denying Plaintiff access to her son and protecting his murderers by spreading lies and slandering Mr. Abrego to justify their unjustified use of force.

45. The LAPD placed an "investigative hold" on the coroner's report until February 24, 2015 to delay release of the coroner's conclusion that it was a homicide.

46. The cover-up by City of Los Angeles and LAPD and the lack of consequences for the LAPD officers involved, demonstrate that the defendants City of Los Angeles, LAPD, Mayor Eric Garcetti and Chief Charlie Beck have breached their duty of care to the public as well as demonstrated deliberate indifference to their rights. Further, their actions demonstrate the existence of a policy or practice within LAPD of promoting, tolerating and/or encouraging of excessive force, murder, and cover-up of these odious acts.

47. Just nine days after the murder of Mr. Abrego, the LAPD's Newton Division Gang Enforcement Detail, of which defendants Calderon and Mares were a part, murdered a 25-year-old unarmed black man, Ezell Ford, by shooting him in the back as he lay face-down on the ground.

48. Because Mr. Abrego, Plaintiff, and their family are Latina/o and the LAPD has a policy, pattern and practice of racially-targeted violence toward Latina/o and black people, defendants conspired to deny urgent medical care to Mr. Abrego and to deny information to Plaintiff and her family.

## DAMAGES

49. As a consequence of the defendants' violation of decedent Omars Abrego's rights, Plaintiff Lilia Abrego Figueroa was mentally and emotionally harmed as a proximate result of Omar's wrongful death, including but not limited to including but not limited to loss of companionship, familial relations, decedent's society, comfort, protection, companionship, love, affection, solace, and moral support. Viewing the video of how the defendants caused Mr. Abrego's agonizing death, has resulted in further trauma, anguish and emotional harm to Plaintiff.

50. Plaintiff found it necessary to engage the services of private counsel to vindicate Plaintiff's rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that they are the prevailing parties in this action under 42 U.S.C.. §§ 1983, 1985-86 and 1988.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT ONE
### Violation of Fourth Amendment of the United States Constitution – Excessive Force
### (42 U.S.C. §1983)

51. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

52. Defendants' above-described conduct, wherein they, while acting under color of state law, used excessive force, denied him urgent medical care, and acted negligently in providing him medical care, violated Mr. Abrego's right as provided for under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizures and violations of his due process rights to life and liberty.

53. As a direct and proximate result of defendants' conduct as alleged above, Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of the decedent Omar Abrego, and will continue to be so deprived for the remainder of her natural life.

54. Plaintiff also is claiming funeral and burial expenses and a loss of financial support.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT TWO
### Violation of Plaintiff's Civil Rights to Familial Relationship
### (42 U.S.C. §1983)

55. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

56. Defendants, acting under color of state law, and without due process of law, deprived Plaintiff of her right to a familial relationship -- including but not limited to loss of

companionship, familial relations, decedent's society, comfort, protection, companionship, love, affection, solace, and moral support -- by discriminating against Mr. Abrego on the basis of race, using unjustified, unprovoked and deadly force and violence, denying him urgent medical care, and acting negligently in regard to his medical care, actions that together resulted in Omar Abrego's death.

57. Defendants' actions violated Plaintiff's rights, privileges, and immunities as secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT THREE
### Conspiracy to Violate Plaintiff's Civil Rights
### (42 U.S.C. §1985)

58. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

59. Defendants' above-described conduct, including the premeditated targeting of Mr. Abrego by defendants Calderon and Mares with excessive force, and including the concerted action of defendants to deny Mr. Abrego urgently needed medical care, deny Mr. Abrego's family of accurate information, and to cover-up the murder of Mr. Abrego because he and his family are Latina/o to protect a policy of racially-targeted violence, violated Plaintiff's rights to equal protection of the laws and to equal privileges and immunities under the laws.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT FOUR
### Violation of Plaintiff's State Statutory Rights
### (California Civil Code §51.7)

60. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

61. Plaintiff is informed and believes and thereon alleges that the conduct of defendants Sergeant Robert Calderon, Sergeant Jeff Mares, and DOES 1-40, including the fatal beating of Mr. Abrego, denial of medical care, negligence in providing medical care, and the deliberate

provision of false information and cover-up that followed, was motivated by prejudice against Omar Abrego, Plaintiff, and their family, who are readily recognizable as Latina/o. In engaging in such conduct, defendants violated the Plaintiff's rights under California Civil Code §51.7 to be free from violence, or intimidation by threat of violence committed against him because of his race.

62. Under the provisions of California Civil Code §52(b), defendants are liable for punitive damages for each violation of Civil Code §51.7, reasonable attorney's fees and an additional $25,000.00.

63. As a proximate result of defendants' wrongful conduct, Plaintiff suffered damages as set forth in this Complaint.

WHEREFORE, Plaintiff prays for relief as set forth below.

### COUNT FIVE
### Municipal Liability
### (42 U.S.C. §1983)

64. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

65. Against defendants City of Los Angeles, LAPD, Mayor Eric Garcetti, Chief Charlie Beck, and DOES 41-60, individually and/or in their capacities as official policymaker(s) for LAPD, Plaintiff further alleges that the acts and/or omissions alleged in this Complaint evince a repeated course of conduct by members of LAPD tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority and disregard for the constitutional rights of citizens such as Plaintiff.

66. Plaintiff is informed and believe and thereon alleges that the acts and/or omissions stated in this Complaint are the proximate result of a custom, policy, pattern or practice of deliberate indifference by defendants City of Los Angeles, LAPD, Mayor Eric Garcetti, Chief Charlie Beck, and DOES 41-60, to the repeated violations of the constitutional rights of citizens by

LAPD officers, which have included but are not limited to repeated acts of: excessive and/or deadly force, racial profiling, making false reports, providing false and/or misleading information, and/or engaging in similar acts of misconduct on a repeated basis.

67. Plaintiff is further informed and believes and thereon alleges that the damages sustained as stated in this Complaint were the proximate result of customs, policies and/or practices which included, but were not limited to, the failure to adequately hold LAPD officers accountable for their misconduct, the failure to properly and fairly investigate complaints about officers' misconduct, and the failure to enact or adopt policies to ensure adequate and/or appropriate oversight of officers to prevent continuing violations of the rights of citizens such as the unconstitutional conduct that occurred in this case.

68. The deliberate indifference, customs, policies or practices of defendants City of Los Angeles, LAPD, Mayor Eric Garcetti, Chief Charlie Beck, and DOES 41-60 resulted in the deprivation of the constitutional rights of Plaintiff, including but not limited to:

   a. The right not to be deprived of life, liberty or property without Due Process of Law;
   b. The right to equal protection of the law;
   c. The right to familial relationships; and
   d. The right to enjoy civil and statutory rights.

69. These rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

70. As a result of the violation of her constitutional rights by defendants City of Los Angeles, LAPD, Mayor Eric Garcetti, Chief Charlie Beck, and DOES 41-60, Plaintiff sustained the injuries and/or damages as alleged in this Complaint.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT SIX**
**Intentional Infliction of Emotional Distress**

71. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

72. Defendants' above-described conduct was extreme, unreasonable and outrageous.

73. The murder of Omar Abrego and his prolonged agony, in public and caught on video that was openly being taken at the scene, caused foreseeable severe and lasting emotional harm and trauma to Plaintiff, Mr. Abrego's mother.

74. Defendants DOE 3 and DOES 31 through 35, by lying to the Plaintiff and her family about Omar's condition, denied her and the rest of the family the truth about Mr. Abrego's death and/or critical condition and the ability to act on that information. These defendants denied Plaintiff and the rest of the family the opportunity to advocate for his urgent medical needs and to spend Omar's last hours together.

75. The concerted action of DOES 1-25 and 31-35, LAPD's release of false information, the withholding of the autopsy report until February 24, 2015 to cover-up the wrongful actions by LAPD officers have caused further emotional harm to Plaintiff, who has her son in a senseless and violent manner, by an organization that covers-up its crimes and continues to not face repercussions for the murder of her son.

76. By engaging in the above-described conduct, the defendants have caused extreme and continuing emotional distress to Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT SEVEN**
**Negligent Infliction of Emotional Distress**

77. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

78. Defendants' above-described conduct was extreme, unreasonable and outrageous.

79. The death of Omar Abrego and his prolonged agony, in public and caught on video that was openly being taken at the scene, caused foreseeable severe and lasting emotional harm and trauma to Plaintiff, Mr. Abrego's mother.

80. Defendants DOE 3 and DOES 31 through 35, by lying to the Plaintiff and her family about Omar's condition, denied her and the rest of the family the truth about Mr. Abrego's death and/or critical condition and the ability to act on that information. These defendants denied Plaintiff and the rest of the family the opportunity to advocate for his urgent medical needs and to spend Omar's last hours together.

81. Defendants DOES 26 through 30, through their above-described conduct including the lack of providing timely and adequate medical care to Mr. Abrego, negligently caused the death of Mr. Abrego.

82. Defendants DOE 3 and DOES 31 through 35, by giving false information to the Plaintiff and her family about Omar's status, denied her and the rest of the family the truth about Mr. Abrego's death and/or critical condition and the ability to act on that information. These defendants denied Plaintiff and the rest of the family the opportunity to advocate for his urgent medical needs and to spend Omar's last hours together.

83. By engaging in the above-described conduct, defendants negligently caused the foreseeable risk that Plaintiff would suffer serious emotional distress as a result of defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.

### COUNT EIGHT
### Assault and Battery

84. The allegations of the preceding paragraphs are repeated as if fully set forth herein.

85. Defendants' above-described conduct constituted assault and battery.

86. As a direct and proximate result of defendants' conduct as alleged above, Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of the decedent Omar Abrego, and will continue to be so deprived for the remainder of her natural life. Plaintiff also is claiming funeral and burial expenses and a loss of financial support.

WHEREFORE, Plaintiff prays for relief as set forth below.

### JURY DEMAND

87. Plaintiffs hereby demand a jury trial in this action.

### PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages in a sum of $25 million;
2. For special damages, including but not limited to, past, present and/or future support
3. For funeral and burial expenses according to proof;
4. For punitive damages and exemplary damages in amounts to be determined according to proof;
5. For reasonable attorney's fees pursuant to 42 U.S.C. §1988;
6. For costs of suit herein incurred; and
7. For such other and further relief as the Court deems just and proper.

By Plaintiff's Attorneys,
SCHEFF, WASHINGTON & DRIVER, P.C.

BY:   /s/ Ronald Cruz_____
Ronald Cruz (State Bar No. 267038)
645 Griswold, Suite 1817
Detroit, Michigan 48226
(510) 384-8859 (Ronald Cruz)

Dated: March 2, 2015